### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**HEAVY EQUIPMENT MOVERS**
**AND INSTALLATION, LLC**                                        **PLAINTIFF**

**v.**                                            **CAUSE NO. 1:24CV61-LG-RPM**

**CALGON CARBON CORPORATION**                                **DEFENDANT**

### MEMORANDUM OPINION AND ORDER CONCERNING
### THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Heavy Equipment Movers and Installation, LLC, ("HEMI") filed this

lien enforcement action against Calgon Carbon Corporation pursuant to Miss. Code.

Ann. § 85-7-403. It now seeks summary judgment that the principal amount due on

the lien is $5,071,883.87, and that it is entitled to pre- and post-judgment interest

and attorney's fees. In the alternative, it seeks partial summary judgment that the

principal amount due is at least $3,000,000.00. Defendant Calgon has also filed a

[71] Motion for Summary Judgment in which it asks the Court to reduce the

amount of HEMI's lien "to any part of HEMI's Subcontract price that remains

unpaid." Def.'s Mot. [71] at 4. After reviewing the submissions of the parties, the

record in this matter, and the applicable law, the Court finds that HEMI's [60]

Motion should be denied, and Calgon's [71] Motion should be granted in part and

denied in part.[1]

---

[1] Calgon filed a [66] Memorandum in Opposition to HEMI's Motion, and HEMI filed
a [82] Memorandum in Opposition to Calgon's Motion, but they did not file a
separate response as required by the Local Rules. *See* L. U. Civ. R. 7(b)(4)
("Counsel for respondent must, within 14 days after service of movant's motion and
memorandum brief, file a response and memorandum brief in support of the

**BACKGROUND**

HEMI entered into a Revised Subcontract Agreement with general contractor O'Neal Constructors, LLC,[2] "to furnish labor, services, materials, and equipment for the piping and mechanical scope of work" on the Calgon Carbon G-Line Expansion Project. Compl. [1-1] at p. 2. The project owner was Defendant Calgon. The original Subcontract price for HEMI's work was $8,748,669.00, but O'Neal approved change orders that increased the price to $10,705,718.43. O'Neal has paid HEMI a total of $10,563,483.13. However, HEMI asserts that it was "required to perform millions of dollars of extensive work outside its original Subcontract scope and to expend hundreds of thousands of dollars in additional costs to procure materials and equipment that the Subcontract explicitly stated O'Neal or others would provide." *Id.* at 4. A dispute arose between O'Neal and HEMI concerning the amount owed to HEMI for its work on the project, so HEMI filed an arbitration complaint against O'Neal.

On November 29, 2023, HEMI and O'Neal entered into a partial settlement agreement in which O'Neal agreed to pay $1,454,548,40.[3] On March 19, 2024,

---

response."). It was not necessary for the Court to consider Calgon's Memorandum because, as explained *infra*, HEMI did not meet its initial summary judgment burden. The Court has considered HEMI's Memorandum, but Counsel for both HEMI and Calgon are instructed to comply with the Local Rules in future filings.

[2] The Court denied Calgon's [20] Motion for Leave to File a Third-Party Complaint against O'Neal for subrogation.

[3] The parties further agreed, "Nothing in this Agreement shall be deemed a presumption, a concession, or an admission by any Party of any fault, liability, or

HEMI and O'Neal then entered into a final settlement agreement, in which O'Neal agreed to pay HEMI an additional $3,500,000, plus $300,000 in interest. Final Settlement [49-3] at 2.[4] In May 2024, O'Neal claimed insolvency and stopped making payments pursuant to the settlement agreements.

HEMI filed a motion asking the arbitration panel to convert the parties' settlement agreements to an arbitration award, but its motion was denied. HEMI then filed a second arbitration complaint against O'Neal for breach of the settlement agreements, but O'Neal filed a Chapter 7 bankruptcy petition before an arbitration hearing could be held. HEMI asserts that it "has no reasonable expectation of any further payment from O'Neal." HEMI Mem. [82] at 17.

In addition to its efforts to recover payment from O'Neal, HEMI filed a $6,256,867.00 lien on Calgon's property on August 18, 2023. HEMI filed an amended lien in the amount of $5,907,809.81[5] after it received additional payments from O'Neal. On January 31, 2024, HEMI filed the present lawsuit against Calgon for enforcement and foreclosure of its lien. It demands an in rem judgment on Calgon's property in the amount of $5,907,809.81 in addition to pre-judgment interest, post-judgment interest, statutory penalties under the Prompt Pay Act,

---

wrongdoing as to any facts, claims, or defenses . . . ." Partial Settlement [49-2] at 4–5.

[4] Like the partial settlement agreement, the final agreement contained a clause in which the parties denied liability and agreed that the settlement did not constitute an admission of wrongdoing on the part of either party.

[5] HEMI admits that O'Neal made an additional payment after the lien was amended, but it has not reduced the lien to account for that payment.

attorney's fees and expenses, and costs.[6]

Calgon counters that Miss. Code Ann. § 85-7-403 prohibits HEMI from including overtime, delay, and other similar damages in its lien on Calgon's property. Thus, it claims that HEMI's lien should be reduced to $142,235.30, which is the adjusted value of the Subcontract ($10,705,718.43) minus payments O'Neal made to HEMI ($10,563,483.13).

## DISCUSSION

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact, and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

---

[6] Mr. Ahern states, "HEMI did not agree to release Calgon Carbon [when it settled with O'Neal]. HEMI's lien claim remained in place, this action—filed in January 2024—remained pending, and HEMI did not release Calgon Carbon, its mechanic's lien or this litigation in any way." Ahern Decl. [82-1] at ¶15.

## II. MISSISSIPPI'S STATUTE ALLOWING LIENS FOR LABOR, SERVICES, OR MATERIALS PROVIDED FOR THE IMPROVEMENT OF REAL ESTATE

Courts are required to apply the plain meaning of a Mississippi statute if its language is clear and unambiguous. *Watson v. Oppenheim*, 301 So. 3d 37, 41 (Miss. 2020). "Mississippi law mandates that 'all words and phrases contained in the statutes are used according to their common and ordinary meaning . . . .'" *Id.* at 41–42 (quoting *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011)).

HEMI imposed its $5,907,809.81 lien on Calgon's property pursuant to a Mississippi statute that grants subcontractors "a special lien on the real estate or other property for which they furnish labor, services or materials." *See* Miss. Code Ann. § 85-7-403(1). The statute provides:

> Each special lien may attach to the real estate of the owner for which the labor, services or materials are furnished if they are furnished at the instance of the owner, design professional or contractor or a subcontractor having direct privity of contract with a contractor, and shall include the value of work done and labor, services or materials furnished.

*Id.* at (2). Furthermore, the lien "shall be limited to the amount due and owing the lien claimant under the terms of its express or oral contract, subcontract or purchase order subject to Section 85-7-405(4)." *Id.* at (3).

The Mississippi courts have not yet had the opportunity to interpret the pertinent statutory language in the present case. Thus, under the *Erie* doctrine, the Court must:

> forecast how the Mississippi Supreme Court would rule. This prediction may be based on Mississippi case law, dicta, general rules on the issue, decisions of other states, and secondary sources. If there

is no evidence to the contrary, this court will presume a Mississippi
court would adopt the prevailing rule if the case was before it.

*Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 392 (5th Cir. 2009).  Most

courts hold that the statutory requirements for imposing a lien should be strictly

construed, but the statutory provisions related to enforcement should be construed

liberally.  *See, e.g., Ado Home Servs., LLC v. Frykman*, 915 S.E.2d 788, 799 (Va. Ct.

App. 2025); *Monarch Build, LLC v. DLH Holdings, LLC*, 567 P.3d 831, 856 (Kan.

Ct. App. 2025); *Galiant Homes, LLC v. Herlik*, 565 P.3d 1109, 1116 (Colo. App.

2025).

Many courts in states that have considered whether lost profits, overhead,

and delay damages can be included in a lien have held that the determination

should be based on the terms of the contract.  *See, e.g., Erb Lumber Co. v.

Homeowner Constr. Lien Recovery Fund*, 522 N.W.2d 917, 919 (Mich. Ct. App. 1994)

("[S]ince the contract terms established the cost of the materials, and profit and

overhead were included, plaintiff is entitled to recover the time-price differential as

well."); *Sentry Eng'g & Constr., Inc. v. Mariner's Cay Dev. Corp.*, 338 S.E.2d 631,

635 (S.C. 1985) ("[O]verhead and profit, when stated as part of the contract price,

are proper components of a mechanic's lien."); 53 Am. Jur. 2d *Mechanics' Liens* § 90

("While such items as overhead and profits, standing by themselves, are

nonlienable, they become lienable when they are included in a contract price or are

reflected in the reasonable value of labor or materials furnished.").  These holdings

are consistent with the plain language of the Mississippi statute; thus, the Court

predicts that the Mississippi Supreme Court would find that overhead, delay, and

other similar damages can be included in a lien only when those damages are permitted under the terms of the contract.

Other jurisdictions have also held that breach of contract damages are not necessarily recoverable via a lien. *See, e.g., Sentry Eng'g & Constr., Inc.*, 338 S.E.2d at 635 ("[T]he mechanic's lien statute may not be used as a vehicle for collecting damages for breach of contract."); Timothy W. Gordon, *Deciding Whether to Include "Claims" in Your Lien*, 37-SUM Constr. Law. 22, 25 (2017) ("[J]ust because a claim is allowable under a breach-of-contract theory does not mean that the associated costs can be recovered as part of a mechanic's lien."). For example, the Michigan Court of Appeals has held, "Although a party suing for breach of contract might recover consequential damages beyond the monetary value of the contract itself, those consequential damages cannot be subject to a construction lien." *TSP Servs., Inc. v. Nat'l-Standard, LLC*, 944 N.W.2d 148, 150 (2019). Importantly, the Michigan lien statute, like the Mississippi statute, provides that the amount of the lien is determined by the terms of the contract. *See id.* at 152.

## III.  THE SUBCONTRACT'S CHOICE OF LAW PROVISION

Since HEMI filed its lien pursuant to a statute that requires contract interpretation, the Court must determine the proper choice of law for interpreting the Subcontract between O'Neal and HEMI. In cases based on diversity jurisdiction, courts must apply the choice of law rules of the forum state, which is Mississippi in the present case. *See Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). O'Neal and HEMI agreed that interpretation of the

Subcontract would be governed by South Carolina law.  Subcontract [66-2] at 21.

Choice of law provisions are generally enforceable under Mississippi law, and

Calgon does not contest the validity of the choice of law provision.  *See Nethery v.*

*CapitalSouth Partners Fund II, L.P.*, 257 So. 3d 270, 273 (Miss. 2018).  Therefore,

the Court will apply South Carolina law to the Subcontract.

## IV.  HEMI'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

The Court finds that HEMI did not meet its initial burden of demonstrating

it is entitled to summary judgment.  First, HEMI did not attach the Subcontract

that governs the amount of its lien to its Motion.  Second, while HEMI has produced

declarations from its Chief Executive Officer, Michael Ahern, and an expert, Kenji

Hoshino, it has not provided sufficient information or analysis for the Court to

determine the appropriate amount of HEMI's lien under the Mississippi statute.

First, Mr. Ahern's declaration provides damage totals that conflict with its

request for judgment in the amount of $5,071,883.87.  He provides the conclusory

opinion that "[a]ll of the work performed, and all of the labor, services, and

materials provided, by Plaintiff for the Project were provided under its Subcontract

with O'Neal." Ahern Decl. [60-1] at 3.[7]  He concedes that some of HEMI's work has

been called "out of scope" or "extra-contractual," but he claims, without further

explanation, that these are references to "work that was not originally in Plaintiff's

---

[7] The declaration that Mr. Ahern signed in support of HEMI's Motion for Summary Judgment is less detailed than the declaration he provided in opposition to Calgon's Motion.  *Compare* Ahern Decl. [60-1] *with* Ahern Decl. [82-1].

scope of work under the Subcontract but was added to Plaintiff's scope of work under the Subcontract during the course of performing the work." *Id.*

As for Mr. Hoshino's Declaration, he merely provides the following conclusory assertion:

> Any references to 'out of scope' work or extra-contractual' work performed by HEMI as described in the Expert Report . . . [are] meant to refer to work not part of HEMI's original scope of work, but it does not mean that the work was not performed under the Subcontract. Rather, this 'out of scope' work or 'extra-contractual' work was added to HEMI's scope of work under the Subcontract at the direction or request of the contractor during the course of performing the work.

Hoshino Decl. [60-2]. HEMI did not submit Mr. Hoshino's report in support of its Motion for Summary Judgment, so Calgon provided it. Mr. Hoshino states that HEMI did not ask him "to opine on . . . *[c]ontractual entitlement* or quantum on disputed change order work or outstanding invoices . . . ." Hoshino Report [66-1] at 5 (emphasis added). As a result, he does not provide a basis for the conclusion in his Declaration that HEMI's "out of scope" or "extra-contractual" work was added to the Subcontract. Furthermore, neither Mr. Ahern, nor Mr. Hoshino discusses the Subcontract's language or explains which provisions of the Subcontract provide for recovery, as a matter of law, for the damages HEMI seeks. Finally, HEMI's Motion is due to be denied for the reasons stated in the following discussion of Calgon's Motion for Summary Judgment.

## V. CALGON'S MOTION FOR SUMMARY JUDGMENT

### A. WHETHER THE DAMAGES HEMI SEEKS ARE DUE AND OWING UNDER THE TERMS OF THE SUBCONTRACT

O'Neal and HEMI agreed that the $8,748,669.00 Subcontract price "is firm, and is not subject to escalation or change, *except by written change order*." Subcontract [66-2] at 4 (emphasis added). The parties further agreed the Subcontract price includes:

> all labor, services, materials, Direct Purchase Items, supervision, tools, scaffolds, hoisting facilities, cranes, equipment, supplies, taxes, permits, licenses, insurance, inspection costs, incidentals, and other costs, expenses, fees and taxes of every kind and description, unless specifically excluded herein, necessary for the proper and timely construction and completion of the work described in Exhibit B required for the completion of the Work described herein.

*Id.*[8] Section 8 of the Subcontract provides that O'Neal may make changes to the work agreed upon "by issuance of a Subcontract Change Order or Change Directive." *Id.* at 14. The parties further agreed:

> With respect to any compensable change in the Subcontract Work, the sum to be paid to Subcontractor for its combined overhead and profit shall not exceed 15%. . . . In all events, any increase in the Subcontract price shall be limited to the Subcontractor's direct, foreseeable, and necessary costs, plus applicable mark-ups, but excluding other indirect, consequential, or unforeseeable costs.

*Id.* at 14–15. Calgon and HEMI agree that O'Neal approved change orders that increased the Subcontract price to $10,705,718.43.

Now, HEMI seeks additional damages, which it has divided into the following

---

[8] It appears that the parties have not provided Exhibit B, which addresses HEMI's scope of work, to the Court.

categories:

> (1) piping material quantity increases; (2) discrete pending change
> orders; (3) extended labor and equipment costs; (4) craft labor cost
> increases; (5) overtime costs; and (6) outstanding invoiced amounts,
> which were expended pursuant to a cost reimbursable construction
> directive from O'Neal for out-of-scope Commissioning Support.

HEMI Mem. [82] at 3–4.  Calgon first argues that HEMI's alleged damages for

delay, overtime, and lost productivity are not recoverable under the terms of the

Subcontract.  *See* Miss. Code Ann. § 85-7-403(3).

HEMI counters that its damages are recoverable under the terms of the

Subcontract because O'Neal and HEMI mutually agreed to strike through portions

of the Subcontract.  After these alterations were made, Section 3(E) of the

Subcontract now Subcontract reads:

> Subcontractor acknowledges that the Contractor may reschedule and
> re-sequence the Work from time to time, and as the demands of the
> Project require, ~~without any additional cost or expense to be paid to
> Subcontractor~~.

Subcontract [66-2] at 3.  HEMI claims that this alteration "specifically makes clear

that HEMI is entitled to additional and related productivity and acceleration costs

(i.e., overtime) and expenses resulting from alterations of the Project schedule."

HEMI Mem. [82] at 11.

O'Neal and HEMI also deleted the following portion of Section 9 of the

Subcontract:

> ~~Subcontractor agrees not to make, and hereby waives, any claim for an
> increase in the Subcontractor price, or for damages or additional
> compensation, on account of any delay (regardless of extent or nature),
> hindrance, suspension, disruption, impact, interference (active or
> otherwise) or other cause which would entitle Subcontractor to an~~

~~extension of time~~.

Subcontract [66-2] at 16.  HEMI claims this deletion gives "HEMI the right to recover for costs incurred for delays (Extended Labor and Equipment Costs), related O'Neal[-] directed delay mitigation/acceleration (Overtime Costs), and impact/disruption (Craft Labor Cost Increases) sustained on the Project that were not caused by HEMI."  *Id.* at 11–12.

HEMI further asserts that the following amendment to Section 9(B) of the Subcontract "confirms that HEMI is entitled to recover costs" caused by the actions of other subcontractors directly from O'Neal:

> Should the completion of the Subcontractor's Work be delayed, hindered, interfered with or made less efficient as a result of the acts or omissions of another subcontractor or supplier employed by Contractor with respect to the Project Work, then Subcontractor may submit to the Contractor ~~other subcontractor or supplier~~ a claim for any additional costs thereby incurred.  ~~Contractor will facilitate a binding resolution to such claim which the Subcontractor is able to substantiate.  Contractor will, if requested by the subcontractors, attempt to mediate the parties' claims~~.  Contractor will write additive/deductive change order to responsible parties for all substantiated claims.

Subcontract [66-2] at 16 (alterations in original).  In summary, HEMI states:

> In the instant action, HEMI is not claiming consequential damages or delay damages in the nature of lost profits.  Rather, HEMI is seeking to recover the costs that it incurred in performing the work.  These are not "losses."  They are costs, and they reflect the costs that HEMI incurred to perform the work on Calgon Carbon's project, for which Calgon Carbon has obtained a substantial benefit.

HEMI Mem. [82] at 30.  It argues that its "lost productivity" and overtime costs are, in essence, labor costs recoverable under the statute and Subcontract.

In their submissions to the Court, the parties did not address the following

Subcontract provision that appears relevant to the parties' dispute:

> Notwithstanding anything herein to the contrary, neither party shall be responsible or held liable to the other party for an indirect, incidental, liquidated, special or consequential damages of any nature whatsoever arising out of or relating to this Agreement or the work or services to be provided by Subcontractor hereunder, including without limitation, liability for loss of use of property, loss of profits or other revenue, loss of product, increased expenses or business interruption, however the same may be caused, all such claims being expressly waived by the parties.

Subcontract [82] at 22. The Court ordered the parties to provide supplemental briefs concerning what effect, if any, this provision, Section 16(J), has on HEMI's claim for enforcement of its lien against Calgon's property. Since this limitation of damages provision states that it controls in the event of a conflict with any other provision in the Subcontract, the Court must analyze the enforceability and effect of this provision before addressing other provisions.

### 1. Whether Section 16(J) is an Affirmative Defense

HEMI asserts that Section 16(J) is an affirmative defense that Calgon has waived. It is unclear whether Calgon can waive a contract provision where, as here, a statute provides that the terms of the contract govern the amount of HEMI's lien.

In a case based on diversity jurisdiction, "'substantive state law determines what constitutes an affirmative defense' and the Federal Rules of Civil Procedure 'provide the manner and time in which defenses are raised and when waiver occurs.'" *Provident Fin. Inc. v. Strategic Energy L.L.C.*, 404 F. App'x 835, 840 n.6 (5th Cir. 2010) (quoting *Arismendez v. Nightingale Home Health Care, Inc.*, 493

F.3d 602, 610 (5th Cir. 2007)).  Therefore, the question of whether 16(J) is an

affirmative defense is governed by South Carolina law.

> The South Carolina Supreme Court has held:

> An affirmative defense conditionally admits the allegations of the
> complaint, but asserts new matter to bar the action.  In other words, it
> assumes all elements of the plaintiff's case have been established.
> Because the plaintiff is taken to have proved a good cause of action, the
> burden of proof shifts to the defendant to show he is not liable.  On the
> other hand, where the defendant pleads special matter that denies an
> element of the plaintiff's cause of action, the defense is not affirmative
> and the burden of proof remains on the plaintiff to establish his case.

*O'Neal v. Carolina Farm Supply of Johnston, Inc.*, 309 S.E.2d 776, 779 (S.C. Ct.

App. 1983) (citations and quotation marks omitted).  The South Carolina courts

have not addressed whether a clause that waives consequential damages or

otherwise limits a party's damages is an affirmative defense.  However, the South

Carolina Supreme Court has held that a statutory cap on punitive damages is not

an affirmative defense because it "does not affect liability or require new matter to

be asserted *but instead limits the amount of damages a plaintiff can recover*."

*Garrison v. Target Corp.*, 869 S.E.2d 797, 806 (S.C. 2022) (emphasis added) (citing

*O'Neal,* 309 S.E.2d at 779).  The court explained that the damages "cap lacks a

common characteristic of the enumerated affirmative defenses—barring liability for

the cause of action—and the inquiry required to be conducted by the trial court . . .

does not affect the proof at trial."  *Id.*  The court further noted that the punitive

damages statute did not shift the burden of proof to the defendant.  *Id.* at 807.

Other jurisdictions have held that clauses similar to Section 16(J) are not

affirmative defenses because a party does not conditionally admit the allegations of

-14-

the complaint or assert new matter that bars an action when relying on such a clause. *See Patsystems (NA) LLC v. The Trend Exchange, Inc.*, 695 F. App'x 206, 208 (9th Cir. 2017); *Tri-Lady Marine, Ltd. v. Bishop Mech. Servs., LLC*, No. 16-62467-CIV, 2018 WL 10466997, at *4 (S.D. Fla. Sept. 20, 2018).  This Court predicts that the South Carolina courts would hold that Section 16(J) is not an affirmative defense based on South Carolina's treatment of a damages cap, as well as these holdings from other jurisdictions.  Given the lack of certainty on this issue, however, the Court will consider whether Calgon waived Section 16(J), which is a procedural question governed by the Federal Rules of Civil Procedure.

## 2.  Whether Calgon Waived Section 16(J)

The Fifth Circuit has "repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later." *Walton v. City of Verona*, 82 F.4th 314, 324 (5th Cir. 2023) (quoting *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 772 (5th Cir. 2017) (collecting cases).  A defendant may avoid waiver of an affirmative defense "if (1) the defendant raised the affirmative defense 'at a pragmatically sufficient time,' and (2) the plaintiff 'was not prejudiced in its ability to respond.'" *Id.*  "[T]he prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff (as every affirmative defense is)." *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 309 (5th Cir. 2019).

In its Answer, Calgon asserted that HEMI's "claims are barred, in whole or in part, by the doctrines of estoppel and/or waiver." Def.'s Ans. [5] at 10. More importantly, Calgon has argued throughout this action that HEMI seeks consequential damages that are not recoverable under the terms of the Subcontract. HEMI also cannot claim unfair surprise because it is charged with knowledge of the Subcontract's provisions. *See Burwell v. S.C. Nat'l Bank*, 340 S.E.2d 786, 789 (S.C. 1986) ("[E]very contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it."); *Regions Bank v. Schmauch*, 582 S.E.2d 432, 440 (S.C. Ct. App. 2003) ("A person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it."). Furthermore, Section 16(J) is not buried in the Subcontract but located just above the signature lines. The Court also gave HEMI the opportunity to provide a supplemental brief concerning Section 16(J)'s effect and applicability. *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant the motion [for summary judgment] on grounds not raised by a party.").

HEMI further argues that Calgon is bound by O'Neal's failure to raise Section 16(J) during arbitration as well as its settlement of HEMI's claim. However, the Subcontract contains a non-waiver clause that forecloses this argument. *See* 17B C.J.S. *Contracts* § 745 (explaining that non-waiver clauses in contracts are generally considered valid and enforceable). As for HEMI's argument that Section 16(B) of the Subcontract prohibits a third party like Calgon from

benefitting from Section 16(J), this is not a typical circumstance in which a third party is seeking benefits under a contract. Rather, a Mississippi statute provides that the terms of the Subcontract govern the amount of HEMI's lien.

The Court next turns to HEMI's argument that it "could have taken additional discovery from O'Neal on this issue to further explore and demonstrate the parties' intent regarding Section 16(J)" if Calgon had raised arguments concerning the provision before O'Neal filed for bankruptcy. HEMI Supp. Mem. [99] at 4. HEMI is presumably aware of the parties' intent in signing a Subcontract containing Subsection 16(J), but it has not submitted any testimony or evidence concerning that intent or explained how its alleged inability to prove intent causes prejudice. As a result, even if Subsection 16(J) could be considered an affirmative defense, the Court finds that neither Calgon nor O'Neal can be charged with waiver of the clause.

### 3.  The Effect of Section 16(J) on HEMI's Lien

Next, the Court must determine whether Section 16(J) bars recovery for all or some of the damages HEMI seeks. As explained previously, this question is governed by South Carolina law.[9] Courts are required to construe an unambiguous contract "according to its plain, ordinary, and popular meaning." *ERIE Ins. Co. v.*

---

[9] HEMI argues that Section 16(J) is a no damage for delay clause that is disfavored by many courts. *See* 7 Bruner & O'Connor *Construction Law* § 19:56. However, Section 16(J) appears to be a waiver of consequential damages clause, which is treated more favorably by Courts. *See id.* Nevertheless, even if Section 16(J) were a no damage for delay clause, HEMI has not attempted to demonstrate that the clause is unenforceable.

*Winter Constr. Co.*, 713 S.E. 2d 318, 321 (S.C. Ct. App. 2011) (citing *Ellie, Inc. v.*
*Miccichi*, 594 S.E. 2d 485, 493 (S.C. Ct. App. 2004)).  "In addition, '[w]here an
agreement is clear and capable of legal interpretation, the court's only function is to
interpret its lawful meaning, discover the intention of the parties as found within
the agreement, and give effect to it.'"  *Id.*

HEMI argues that Section 16(J) does not apply to the damages it seeks
because it claims it is not seeking consequential damages.  However, Section 16(J)
provides that the following non-exclusive list of damages are expressly waived by
the parties to the Subcontract: "liability for loss of use of property, loss of profits or
other revenue, loss of product, [and] increased expenses or business interruption,
however the same may be caused."  Subcontract [82] at 22.

HEMI has included the following increased expenses in its lien on Calgon's
property: (1) "increases in piping material quantities and related labor for increases
in the designed quantities of piping and mechanical work"; (2) "extended and
increased labor and equipment costs"; (3) "increased craft labor costs"; and (4)
overtime costs."  Ahern Decl. [82-1] at 2–3.  There is no indication that these
damages are due and owing under the terms of the Subcontract.

For example, HEMI states that the piping material increases were incurred
because it "was required to perform more work and provide more labor, services,
and materials to the Project than originally required and contemplated under the
Subcontract."  HEMI Mem. [82] at 8.  Mr. Ahern testified:

> Due to the substantially incomplete design at the time Plaintiff bid for
> the Project, Plaintiff and O'Neal agreed for Plaintiff to base its

-18-

> material installation bid on a limited Material Take Off ("MTO")
> provided by O'Neal, with an express understanding and reservation of
> rights that Plaintiff could adjust its bid and receive a revised
> subcontract price if the finalized isometric drawings for the Project
> issued by O'Neal differed from the MTO in materials and quantities.

Ahern Decl. [82-1] at 8.  He explained that this basis of bid is documented in

Exhibit B.1 to the Subcontract, which provides:

> Piping services include labor, equipment and materials for the works
> as listed in the 19220-C-023_Exhibit_B-Scope_of_Work.12-17-
> 21_REV03 document.  No other pipe works have been included in
> HEMI pricing unless specifically referenced within this document.
> HEMI has utilized the "22-01-11_Bulk_MTO" document received in
> addendum 2 to quantify our pricing for the piping installation works
> for this project.  The MTO does not list the piping fluid codes so HEMI
> assumes quantities for items such as Pneumatic Conveying, etc. are a
> part of these bills of quantities.

*Id.*[10]  He opines that this provision establishes "HEMI's right to adjust its bid and

receive a Change should the finalized isometric drawings reveal differences in

material and quantities against the MTO," but he does not cite or quote any

contract language that supports his opinion.  *Id.*  He merely claims:

> In fact, there was a substantial increase in the final quantity of work
> reflected in O'Neal's final isometric drawings in comparison to the
> quantities shown in the MTO.  As a result, HEMI was required to
> perform more work and provide more labor, services, and materials to
> the Project than originally required and contemplated under the
> Subcontract . . . .

*Id.*

Section 3(I) provides that the contract price shall not be increased except by

---

[10] Neither Exhibit B.1 nor the two documents it references—"Exhibit_B-
Scope_of_Work.12-17-21_REV03 document" and "22-01-11_Bulk_MTO document"—
have been provided to the Court.

written change order.  Section 8 of the Subcontract provides specific procedures that the parties agreed to follow for change orders.  HEMI has not asserted that these procedures were followed or that O'Neal approved a change order for these piping material increases.  There is no evidence that HEMI's piping material increases are due and owing under the Subcontract; rather they are excluded as increased expenses in Section 16(J).  HEMI's lien must be reduced to this extent.

As for alleged increased labor and equipment costs, craft labor costs, and overtime costs, HEMI relies on struck portions of Sections 3(e) and 9 of the Subcontract.  In other words, HEMI is seeking recovery based on deletions from the Subcontract instead of its terms.  HEMI was required to show that the alleged additional costs are recoverable under the contract as a whole.  *See Retreat at Charleston Nat'l Country Club Home Owners Ass'n, Inc. v. Winston Carlyle Charleston Nat'l, LLC*, 915 S.E.2d 736, 750 (S.C. Ct. App. 2025) ("A contract is read as a whole document.").  Since HEMI has not attempted to demonstrate that it complied with the required change order procedures, its increased labor and equipment costs, craft labor costs, and overtime costs are not recoverable under the Subcontract.  These costs constitute increased expenses barred by Section 16(J), requiring further reduction of HEMI's lien.

The two remaining categories of damages sought by HEMI are "outstanding discrete change orders" and "outstanding invoices for labor, equipment, and materials for project commissioning."  Ahern Decl. [82-1] at 11, 13–14.  Mr. Ahern testifies that the "outstanding discrete change orders" complied with Section 8 of

-20-

the Subcontract, and he explains that O'Neal and HEMI were still negotiating these change orders when HEMI's work on the project concluded. He further testifies that O'Neal instructed HEMI to perform this work. The "outstanding invoices" include invoices for "outstanding original Subcontract work completed as well as prior-approved Subcontract change order work that were uncompensated at the time HEMI completed all of its work." *Id.* at 3–5. Therefore, a genuine issue of material fact exists regarding whether HEMI is entitled to include at least some portion of these costs in its lien.

### B. WHETHER THE DISPUTED DAMAGES CAN BE CONSIDERED DUE AND OWING

Calgon next argues that the damages O'Neal disputed during arbitration should not be included in the lien because disputed damages are not "due and owing" under the Mississippi lien statute. *See id.* (citing *Wm. R. Clarke Corp. v. Safeco Ins. Co.*, 938 P.2d 372 (Cal. 1997), and *W.-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.*, 661 N.E.2d 967, 972 (N.Y. Ct. App. 1995)). This argument is governed by Mississippi law because it turns on the meaning of the Mississippi statute.

Calgon relies on cases that concern pay-when-paid provisions purporting to prohibit a subcontractor from recovery until the project owner has paid the general contractor.[11] *Safeco*, 938 P.2d at 374; *Aetna,* 661 N.E.2d at 971. The owners in

---

[11] The other cases cited by Calgon are also unpersuasive here because they do not address lien statutes.

both cases were insolvent, so it was unlikely that the subcontractors could ever recover for the work they performed.  *Safeco*, 938 P.2d at 375; *Aetna*, 661 N.E.2d at 969.  In both cases, the court noted that payment was not due because a pay-when-paid provision prohibited payment to the subcontractor until an insolvent owner paid the general contractor.  *Safeco*, 938 P.2d at 378; *Aetna*, 661 N.E.2d at 972.  Thus, those cases concern uncollectible debts, not a disputed debt.

Calgon also cites *Safeco* for the proposition that a subcontractor cannot recover pursuant to a lien unless its payment rights have vested.  *Safeco*, 938 P.2d at 376.  The context of this argument follows:

> Safeco argues that a pay if paid provision in a construction subcontract does not violate Civil Code section 3262's anti-waiver provisions because, under Civil Code section 3140 (limiting a subcontractor's recovery on a mechanic's lien claim to "such amount as may be due him according to the terms of his contract"), *mechanic's lien remedies are available only to subcontractors whose payment rights have vested under the terms of their contracts.*  Absent a contractual right to payment, a subcontractor has no mechanic's lien remedy to enforce.

*Id.*  The *Safeco* court noted, "Strictly speaking, Safeco is correct."  *Id.*  Calgon claims that disputed claims are not vested, and thus they cannot be included in a lien.  The Mississippi courts have not held that a subcontractor's claim must be vested before it can recover on a lien, and it appears that no other court, aside from the *Safeco* court, has mentioned such a requirement.

If Mississippi adopted such a requirement, it would likely hold that

> "[v]ested" means different things in different contexts.  This caveat noted, we do think of vested interests in contrast to contingent ones.  Rights that are "vested" are seen in contradistinction to ones that are "inchoate imperfect and ambulatory."

*Brown v. Brown*, 574 So. 2d 688, 691 (Miss. 1990) (internal citations omitted); *see also Vested, Black's Law Dictionary* (12th ed. 2024) ("[V]ested" is defined as "[h]aving become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute.").

In *Safeco*, the subcontractor's right to payment was not vested because it was contingent on the owner's payment to the general contractor under the pay when paid clause. *See* 938 P.2 at 890. Since disputed claims are not necessarily contingent, the *Safeco* decision does not foreclose HEMI's claims. *See Sea Pines Co. v. Kiawah Island Co.*, 232 S.E.2d 501, 504 (S.C. 1977) (holding that the lower court erred in vacating a lien on the basis that the parties disputed whether the plaintiff had been fully compensated for the services it provided on the project); *Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.*, 11 F. App'x 225, 238 (4th Cir. 2001) (finding that vested authority to adjust a claim does not mean that the claim is undisputed).[12] As a result, Calgon's argument concerning disputed claims is not well taken.

### C. WHETHER HEMI'S DAMAGES ARE BASED ON THE VALUE OF THE WORK DONE OR SERVICES PROVIDED

Finally, Calgon claims that HEMI's alleged damages for delay, overtime, and lost productivity should not be included in the lien because these damages are not based on the value of the work done or services provided. The Mississippi statute

---

[12] Since the Court has determined that disputed claims can be included in a lien, it is not necessary for the Court to analyze HEMI's argument that some of its claims were no longer disputed due to its settlement with O'Neal.

first states, "Each special lien . . . shall include the value of work done and labor,

services or materials furnished."  Miss. Code Ann. § 85-7-403(2).  It further

provides, " Each special lien . . . shall be limited to the amount due and owing the

lien claimant under the terms of its express or oral contract, subcontract

 or purchase order . . . ."  *Id.* at (3).

> Although mechanic's lien statutes vary state to state, the amount of a
> lien is typically based on the "value" of the labor performed and
> equipment and materials supplied.  And oftentimes, the claimant's
> contract amount is the best indication of what that "value" is.  In fact,
> some states limit lien claims to the contract amount.  But simply
> because a claim for additional compensation might be allowable under
> a contract or subcontract does not mean that the costs or damages
> associated with that claim can be included in a mechanic's lien.  As one
> court put it, "a mechanic's lien proceeding is not intended to settle the
> contractual obligations of the parties."

Gordon, *supra.*, 25 (quoting *Artsmith Dev. Grp., Inc. v. Updegraff*, 868 A.2d 495, 496

(Pa. Super. Ct. 2005)).

The Court has already determined that some of the damages HEMI has

included in its lien exceed the amount due and owing under the terms of the

Subcontract, but genuine issues remain as to whether HEMI's claims for

"outstanding discrete change orders" and "outstanding invoices for labor,

equipment, and materials for project commissioning" are due and owing.  At this

time, the Court finds that it would be premature to analyze whether sections 2 and

3 of the lien statute constitute separate limitations on the amount of a lien or

whether the Mississippi Legislature intended for the terms of the contract to be the

measure of the value of the work and materials provided.  Even if the amount due

and owing under the Subcontract could be further reduced based on the value of the

-24-

work done and services provided, Calgon has not demonstrated as a matter of law that such a further reduction would be warranted on this basis.

## CONCLUSION

Actions or inactions on the part of O'Neal, Calgon, and/ or other subcontractors may have caused HEMI to incur additional costs that it may be capable of recovering in the form of extra-contractual or equitable damages. This lawsuit is a lien foreclosure or enforcement action, and the Mississippi statute is the sole basis for HEMI's lien on Calgon's property. That statute strictly limits the amount of HEMI's lien to the amount due and owing under the terms of the Subcontract. Therefore, HEMI's lien must be reduced to the extent that it includes damages that are not recoverable under the plain language of the Subcontract.

For the reasons previously stated, the Court finds that Calgon is entitled to summary judgment to the extent that HEMI seeks costs related to piping material increases, extended and increased labor and equipment costs, increased craft labor costs, and overtime costs. The Court cannot calculate the specific amount by which the lien should be reduced because it appears that O'Neal made additional payments to HEMI after HEMI calculated each category of damages. Calgon's Motion for Summary Judgment is denied as to HEMI's claims concerning outstanding change orders and invoices. HEMI's Motion for Summary Judgment, or in the alternative, for Partial Summary Judgment is denied. To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff Heavy Equipment Movers and Installation, LLC's [60] Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant Calgon Carbon Corporation's [71] Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED AND ADJUDGED** this the 30th day of July, 2025.

s/ *Louis Guirola, Jr.*

Louis Guirola, Jr.
United States District Judge